## WALKER v. GOODLETT.

### Opinion delivered February 19, 1912.

1.  APPEAL AND ERROR.—A finding of a chancellor contrary to the decided preponderance of the testimony will be set aside on appeal. (Page 386.)

2.  INFANTS—VALIDITY OF CONVEYANCES.—An infant can bind and incumber his estate for the value of necessaries furnished to him, but can not irrevocably alienate his estate, even for that purpose. (Page 386.)

Appeal from Hempstead Chancery Court; *James D. Shaver*, Chancellor; reversed.

*J. W. Bishop*, for appellant.

Appellant, being under the legal age at the time of signing the deed, had the right to disaffirm it after arriving at full age. 90 Ark. 351; 44 Ark. 153; 21 Ark. 294; 38 Ark. 278; 62 Ark. 316; 85 Ark. 556; 77 Ark. 35; 36 Ill. 376; 74 Ind. 115; 116 Ky. 92; 13 Mass. 371, etc.

An infant has not the legal capacity to irrevocably alienate his property. 34 Ala. 150; 36 Am. St. Rep. 606; 155 N. Y. 535; 82 Am. St. Rep. 103.

He may disaffirm, even against a subsequent *bona fide* purchaser from the grantee or vendee. 76 Am. Dec. 209; 21 Ark. 592; 43 Am. Rep. 629.

*L. F. Monroe*, for appellee.

The chancellor's finding against appellant's contention as to age will not be disturbed unless clearly contrary to the preponderance of the testimony. 92 Ark. 538; 75 Ark. 9; *Id.* 52; 73 Ark. 489; 72 Ark. 67; 71 Ark. 605; 68 Ark. 139; 68 Ark. 315; 77 Ark. 309; 62 Ark. 615.

McCulloch, C. J. The plaintiff, Dan Walker, disaffirmed a deed of conveyance which he alleges was executed by him to the defendant, J. E. Goodlett while he was under twenty-one years of age, and he instituted this action to cancel said conveyance.

The defendant denied in his answer that the plaintiff was under twenty-one years of age when he executed the deed, and this presented the only issue which the chancellor was called on by the pleadings to decide.

The deed was executed on December 28, 1908, and plaintiff alleged that he was born on September 2, 1888, which, if true, made him twenty years and about three and one-half months old at the time he executed the deed. He testified to his age and produced the Bible of his deceased grandfather, in which the date of his birth had been recorded. Tom Walker testified that he had known plaintiff since the latter was a small boy, and that he was about twenty-three years of age at the time the witness testified. Roger Walker testified that plaintiff was born in September, 1888, and produced a Bible in which

the dates of plaintiff's birth and of others were recorded. He stated the place and the particular house where plaintiff was born, and said that he made the record of the birth on the day plaintiff was born. Emma Walker, the widow of plaintiff's grandfather, testified that she knew plaintiff's age, and that he was only twenty years of age when he executed the deed. Bettie Johnson testified that she was an intimate friend of plaintiff's mother, and knew his age, and stated that he was born in September 1888. Sam Walker, plaintiff's putative father, testified that the plaintiff was born in September, 1888, and that, as the plaintiff's mother told him he was the father of the boy, he recorded the date of the birth in his Bible.

Defendant introduced testimony tending to establish the fact that plaintiff was born in September, 1887, which made him a little over twenty-one years of age when he executed the deed. Mrs. Whissen, a lady on whose farm the mother of plaintiff lived, testified that her twin children were born in February, 1888, and other testimony adduced by the defendant tended to show that plaintiff was born in September before the birth of the Whissen twins. Clay Porter testified that he had known plaintiff since the latter's infancy, and that he was on the Whissen place in September before the birth of the twins. He stated that plaintiff was a "good big baby," meaning, as he states, three or four months old, when the twins were born, and that plaintiff's mother waited on Mrs. Whissen at that time. Martha Porter testified that the birth of plaintiff was near the date of the birth of the twins, but she contradicted herself several times as to the date, whether plaintiff or the twins were born first, so that her testimony is of little, if any, value. Iverson Brown testified that he had known plaintiff since infancy, that his (witness') brother, Cornelius, was born on October 8, 1888, and he remembered, when his brother was born, that his mother sent him to Ozan that day, and he went by the Whissen place and saw plaintiff, who was then a "good big baby."

This is the state of the testimony. It is clear that plaintiff was born in September, either in 1887 or 1888. Five witnesses, in addition to plaintiff himself, testified that he was under twenty-one years of age when he executed the deed, and two witnesses (not including Martha Porter) testified that he was a little over twenty-one. Plaintiff's witnesses were mostly

his kindred; the others were mere acquaintances who lived in the neighborhood.   In addition to the numerical preponderance of plaintiff's testimony, we are of the opinion that the weight in other respects was on that side.   Martha Porter's testimony was, as already stated, so contradictory that it was not entitled to any value.   Brown was only about ten years of age when plaintiff was born, and the only reason that he remembered the fact is that his brother was born in October, 1888, and the plaintiff was a good sized baby at that time.   It is improbable that, being so young himself at the time, he could accurately remember so long afterwards the age of another child.   Clay Porter is the only witness on that side whose testimony is not inherently weak, and it, too, is weakened by the fact that he is not related to plaintiff nor interested in him except as a neighbor and acquaintance, and there is little reason why he should remember plaintiff's age.   It is true that there are weak points in some of the testimony adduced by plaintiff, but we are convinced, upon the whole, that there is a decided preponderance of the testimony in his favor, and it becomes our duty, under those circumstances, to set aside the decree.

It appears from the testimony that a part of the consideration for the conveyance was a debt for supplies furnished plaintiff by defendant to enable the former to make and gather a crop.   The remainder of the consideration was a debt of Emma Walker, who joined in the conveyance.

An infant can bind and incumber his estate for the value of necessaries furnished to him, (*Cooper* v. *State*, 37 Ark. 421), but can not irrevocably alienate his estate, even for that purpose.

Reversed and remanded with directions to enter decree for plaintiff in accordance with this opinion.